UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SARAH M. K.,[1]

                                 Plaintiff,                DECISION AND ORDER

-vs-

                                                                20-CV-1309 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Jul. 30, 2021, ECF No. 12; Def.'s Mot., Dec. 27, 2021, ECF No. 14. Plaintiff argues that the administrative law judge ("ALJ") committed legal error in her evaluation of the medical opinion evidence, and that the ALJ's residual functional capacity determination was not supported by substantial evidence. Pl. Mem. of Law, 10–19, Jul. 30, 2021, ECF No. 12-1. The Commissioner disputes Plaintiff's contentions. Def. Mem. of Law, Dec. 27, 2021, ECF No. 14-1. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, the Commissioner's motion [ECF No. 14] is granted,

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

and the Clerk of Court is directed to close the case.

BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff filed her DIB application in July 2017, alleging a disability onset date of November 18, 2015. Transcript ("Tr."), 141, Apr. 19, 2021, ECF No. 11. Plaintiff alleged that her ability to work was limited by a shattered right wrist, bipolar disorder, anxiety, exercise-induced asthma, a bulging disc in her back, depression, herniated discs, migraines, high cholesterol, high blood pressure, and low potassium. Tr. 165. In October 2017, the Commissioner notified Plaintiff of the determination that she was not disabled, and that she did not qualify for DIB benefits. Tr. 83–86. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 89.

Plaintiff's request was approved, and Plaintiff appeared with her counsel for a hearing before the ALJ via videoconference in July 2019, and an impartial vocational expert also joined by phone. Tr. 31–66. During the course of the hearing, Plaintiff testified that she was diagnosed with fibromyalgia in 2012, which causes "widespread pain" and deprives her of sleep, which in turn causes her to be "exhausted all the time" and gives her "brain fog." Tr. 46. She also stated that she was diagnosed with bipolar disorder as a "rapid cycler," which means that she cycles between high energy and deep depression over a period of "a day or two." Tr. 47–48. She attributed these problems to a motorcycle accident that – among other things – crushed her right hand. Tr. 48. Plaintiff also testified that she has nerve issues in her left hand that cause instant weakness (Tr. 49), an inability

to reach overhead with her arms (Tr. 49), pain and pressure in her lower back (Tr. 50), balance issues requiring a cane (Tr. 51), asthma (Tr. 54), and three to four migraines a month (Tr. 54). She estimated that she can stand normally for only about five minutes before needing a stool (Tr. 53), and that she can lift only about one pound without pain (Tr. 54), and only about eight pounds with pain (Tr. 55).

Plaintiff stated that due to her condition, she relies on her children to do most of the housework for her (Tr. 39), that she is unable to go to her children's school functions (Tr. 40), and that her daughter, sister, mother, or husband have to take her grocery shopping (Tr. 40). She did help out as a bartender four to five times each month for special events at the Portsville Legion, but spends most of her day sitting in her recliner, watching TV, and playing games on her phone. Tr. 46. Plaintiff testified that she has difficulty maneuvering out of bed each morning and bending to spit out her toothpaste after brushing her teeth (Tr. 55), and that she can't stand long enough to cook a decent meal (Tr. 56).

On August 22, 2019, the ALJ denied Plaintiff's claim for DIB benefits. Tr. 26. In her decision, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through June 30, 2018 ("date last insured"). Tr. 112. At step one of the Commissioner's "five-step, sequential evaluation process,"[2] the ALJ found that

---

[2] Claimants must meet the insured status requirements of the Social Security act to be eligible for DIB benefits. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130. In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5)

Plaintiff has not engaged in substantial gainful activity between her alleged onset date of November 18, 2015 and her date last insured of June 30, 2018. Tr. 17. At step two, the ALJ determined that as of her date last insured, Plaintiff had several severe impairments: degenerative disc disease of the lumbar spine, status post lumbar surgery, degenerative disc disease of the thoracic spine, fibromyalgia, and major depressive disorder. Tr. 18. The ALJ also noted Plaintiff's claims of wrist pain, asthma, and migraines, but found that those impairments did not interfere with her ability to function on a daily basis. Tr. 18.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. In particular, the ALJ found that Plaintiff's degenerative disc disease did not meet Listing 1.04. In addition, after performing the "special technique"[3] required for evaluating mental impairments, the ALJ

---

whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

[3] When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must evaluate the claimant using "Paragraph A" criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3). The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation resulting from the claimant's

found that Plaintiff's affective disorder did not meet Listing 12.04 because she did not have marked difficulties in at least two of the mental functioning areas, or extreme difficulty in at least one area. Tr. 18. Rather, the ALJ concluded that Plaintiff had only a mild limitation in understanding, remembering, or applying information; and moderate limitations in the respective areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself. Tr. 19.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that as of her date last insured, Plaintiff had the residual functional capacity[4] ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with the following limitations:

> [O]nly occasional climbing ramps, stairs, balance, or stoop. She should never kneel, crouch, crawl or climb ladders, ropes or scaffolds. She could occasionally reach overhead and occasionally handle bilaterally. She could perform simple, routine, repetitive tasks and make simple decisions when dealing with change in the work setting. She can sit and stand at will, remaining on task. She requires a cane to balance.

Tr. 20. At step four the ALJ found that Plaintiff had no past relevant work. Tr. 117. However, based on Plaintiff's age, education, work experience, and RFC, and on the testimony of the impartial VE, the ALJ found at step five that through her date last insured, Plaintiff could have performed such jobs in the national economy as a telephone solicitor, charge account clerk, or a food and beverage order clerk. Tr. 25. Hence, the ALJ concluded that Plaintiff *was not* disabled through her date last insured. Tr. 26.

On July 27, 2020, the Commissioner's Appeals Council denied Plaintiff's request

---

mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d).
[4] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

to review the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

## LEGAL STANDARD

42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner

applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

## DISCUSSION

Plaintiff asks the Court to review whether the ALJ properly evaluated the opinion evidence, and whether the ALJ's RFC was supported by substantial evidence. After considering the record and the arguments of the parties, the Court agrees with the Commissioner that the ALJ did not err in evaluating the opinion evidence, and that the RFC was supported by substantial evidence.

<u>The ALJ did not err in her evaluation of the opinion evidence</u>.

On July 19, 2019, Dr. Umeer Ashraf, Plaintiff's primary care physician, submitted a completed standardized form entitled, "Fibromyalgia Medical Source Statement," on which he marked that Plaintiff met the American College of Rheumatology criteria for fibromyalgia and that her impairments lasted or could be expected to last for at least 12

months. Tr. 674. He also indicated that Plaintiff could only walk 2 blocks without rest or severe pain, could only sit or stand for 30 minutes at a time, could sit for less than 2 hours during an 8-hour workday, and could only stand for about 2 hours. Tr. 675. Dr. Ashraf indicated that Plaintiff would likely be "off task" for 25% or more of the workday, and that she would likely be absent from work more than four days per month as a result of her impairments. Tr. 677. The ALJ gave Dr. Ashraf's form source statement "little weight," and summarily stated that "[h]is limitations are excessive and not supported by the medical evidence of record and not supported by the record." Tr. 24.

Plaintiff notes that the ALJ did not cite any specific portions of the record in support of her assessment of Dr. Ashraf's source statement, and argues that this "unexplained assertion . . . does not comply with the regulations." Pl. Mem. of Law at 12. That is, Plaintiff maintains that "when the ALJ provides no analysis . . . this Court cannot provide meaningful review." Pl. Mem. of Law at 13. The Commissioner counterargues that the ALJ properly evaluated Dr. Ashraf's opinion, and that the record shows the opinion to be inconsistent with Dr. Ashraf's own treatment notes from the relevant period, as well as with the evidence from other medical and nonmedical sources in the record. Def. Mem. of Law at 11.

*Legal Principles*

Because the initial DIB claim in the present case was filed after March 27, 2017, the Commissioner was required to apply 20 C.F.R. § 404.1520c to evaluate the opinion evidence, rather than 20 C.F.R. § 404.1527. § 404.1520c(c) lists a number of factors the Commissioner must consider when considering the medical opinions in a particular case, including: supportability, consistency, relationship of the source with claimant, length of

treatment relationship, examining relationship and frequency of examination, purpose and extent of treatment relationship, the source's specialization, and other factors "that tend to support or contradict a medical opinion . . . ."

As the Second Circuit has noted,

> These new regulations no longer apply the treating-physician rule, which gave deference to the opinion of the treating physician. Instead, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Id. § 404.1520c(a). The regulations explain that when "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings," the "most important factors . . . are supportability . . . and consistency." Id. The regulations further require the agency to "explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision." Id. § 404.1520c(b)(2).

Loucks v. Kijakazi, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).

Under the new regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is procedural error. Loucks, 2022 WL 2189293 at *2. However, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.'" Loucks, 2022 WL 2189293 at *2 (quoting Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

*Application*

In the present case, the ALJ summarily stated that Dr. Ashraf's opinion was "not supported by the medical evidence of record and not supported by the record." Tr. 24. Because the ALJ failed to explain more thoroughly how she considered the supportability and consistency of Dr. Ashraf's opinion, she committed procedural error.

9

Nevertheless, a "searching review of the record" assures the Court that the substance of 20 C.F.R. § 404.1520c was not traversed. In general, although the ALJ's assessment of Dr. Ashraf's opinion was cursory, the abundance of citations to specific treatment records throughout the ALJ's full decision suggests a thorough examination of the evidence. More particularly, the ALJ's discussion of the medical evidence indicates sufficient familiarity (1) with Dr. Ashraf's treatment relationship with Plaintiff to make an informed judgment regarding the supportability of Dr. Ashraf's medical opinion, and (2) with the record as a whole to assess the consistency of Dr. Ashraf's medical opinion with the other evidence.

Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The Court is satisfied that the ALJ was sufficiently familiar with the medical evidence from Dr. Ashraf's practice, Omega Family, to consider the supportability of Dr. Ashraf's opinion.

As an initial observation, the Court notes that Dr. Ashraf's opinion itself did not directly reference any medical evidence or provide supporting explanations. Tr. 674–677. *See Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019) (affirming an ALJ's decision where the treating physician's opinions were "'merely checkbox forms that offer little or nothing with regard to clinical findings and diagnostic results,' and, further, were inconsistent with the moderate findings reflected in the doctors' notes"). Moreover, earlier in her decision, the ALJ alluded specifically to treatment notes from Plaintiff's visits to Dr. Ashraf's practice that occurred approximately eleven months and three months,

10

respectively, prior to Plaintiff's date last insured. Referencing treatment notes from Plaintiff's visit to the practice in July 2017, the ALJ noted that Plaintiff "had flare ups but she did not take any medication for her back pain," and that Plaintiff "ambulated with a normal gait but there was tenderness to palpitation and . . . decreased range of motion in the lumbar spine." Tr. 21 (citing Tr. 287–88). With respect to a March 2018 visit to the practice, the ALJ stated that Plaintiff "reported significant improvement after a steroid injection but she reported her back pain returned . . . ." Tr. 22 (citing Tr. 398). That same record also noted that Plaintiff walked with a normal gait and had full range of movement bilaterally in her upper and lower extremities, and that her motor strength was a 5 out of 5. Tr. 400. In other words, the ALJ referenced medical treatment records from Dr. Ashraf's practice that did not support Dr. Ashraf's opinion regarding the severity of Plaintiff's limitation.

Consistency means "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 404.1520c(c)(2). The Court is also satisfied that the ALJ considered the consistency of Dr. Ashraf's opinion with the other evidence in the record.

In addition to demonstrating familiarity with the treatment records from Dr. Ashraf's practice, the ALJ's decision in this case included a detailed discussion of the record evidence. With regards to the treatment history for Plaintiff's back pain, the ALJ noted that she underwent nerve block procedures in May 2015 and December 2017, received epidural steroid injections in June 2015, June 2016, and April 2016, and tried medial branch radiofrequency oblation on four separate occasions. Tr. 21 (referencing records

from Plaintiff's hospital visits for the procedures). The ALJ also discussed at length Dr. Russell Lee's consultative medical examination in September 2017, including that Plaintiff had normal gait and full squat, full range of motion in the cervical and lumbar spine, and that an x-ray of her lumbar spine was negative. Tr. 21. Lastly, the ALJ evidenced a close reading of treatment records from Plaintiff's spine surgeon, Dr. Eric Roger, and her pain management specialist, Dr. Javaid Malik. Tr. 22 (referencing Tr. 318–351). These records indicate significant low back pain, but only moderate distortion of the spine, the ability to walk with normal gait, 5 out of 5 motor strength, and full range of motion using her shoulders and hips. *See, e.g.,* Tr. 342–45. That is, the records the ALJ referenced indicate that Dr. Ashraf's conclusions were not consistent with other evidence in the record.

Consequently, the Court finds the ALJ's procedural error to be harmless, and declines to remand the case to the Commissioner on that ground.

<u>The ALJ's RFC determination is supported by substantial evidence</u>.

In contrast to her assessment of Dr. Ashraf's medical opinion, the ALJ found the medical opinion of consultative medical examiner Dr. Russell Lee to be "persuasive," and the medical opinion of state agency review physician Dr. Miller to be "partially persuasive." After an in-person examination of Plaintiff in September 2017, Dr. Lee diagnosed Plaintiff as having fibromyalgia, arthritis, disc disease involving the cervical, thoracic, and lumbar spine, chronic back pain, and bipolar disorder. Tr. 301. He gave her a prognosis of "fair," and indicated that Plaintiff had "moderate" limitations in prolonged standing, walking, climbing stairs, bending, lifting, kneeling, squatting, carrying heavy objects, and reaching above her head. Tr. 301. After reviewing Plaintiff's records in October 2017, Dr. Miller concluded, "[b]ased on the totality of evidence in the file, [Plaintiff] is assessed with

retaining the capacity for light work with restrictions given for respiratory." Tr. 77. The ALJ stated that, with the exception of an absence of evidence for Dr. Miller's respiratory restrictions, the opinions of both Dr. Miller and Dr. Lee were "supported by the medical evidence in the record." Tr. 24.

Plaintiff points out that the respective opinions of Dr. Lee and Dr. Miller were both issued before Plaintiff underwent back surgery in November 2018, and thus were "very stale because they could not take into account Plaintiff's deteriorating condition and subsequent surgery." Pl. Mem. of Law at 16. Consequently, she maintains that the ALJ's RFC determination was not supported by substantial evidence. The Commissioner counterargues that the RFC was based on substantial evidence, noting that Dr. Lee's and Dr. Miller's opinions were not stale simply because they were older than Dr. Ashraf's, and that the opinions were consistent with the other evidence in the record. Def. Mem. of Law at 16–17.

*Legal Principles*

The Second Circuit has not recognized "an unqualified rule that a medical opinion is superseded by additional material in the record." *Camille v. Colvin,* 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (rejecting ). Rather, the key question is "whether there is substantial evidence to support the Secretary's determination" that a claimant is not or was not disabled during the relevant period. *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) (citing *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1041 (2d Cir. 1984)). *See also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when "the record contains

sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.") (internal citation omitted). Therefore, remand is warranted only where more recent evidence in the record "directly contradict[s] the older reports of [a claimant's] functioning on which the ALJ relied," and the ALJ failed to analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020).

*Application*

In evaluating the opinion evidence of Dr. Lee and Dr. Miller in this case, the ALJ was aware of Plaintiff's decision to undergo surgery in November 2018. Indeed, despite the fact that the surgery was performed several months after Plaintiff's date last insured, the ALJ devoted three full paragraphs of her decision to discussing Plaintiff's surgery and other medical treatment all the way through May 2019. The ALJ noted that Plaintiff opted for the surgery because conservative treatments for her back pain, including physical therapy and injections, had failed. Tr. 22. The ALJ also noted that at a follow-up appointment six weeks after surgery, Plaintiff "reported significant improvement in her pain levels," but that by May 2019 she complained of thoracic pain which worsened with housework, sitting, lifting, standing, light work, and using the bathroom. Tr. 22. However, even having noted Plaintiff's treatments after her date last insured, the ALJ still found Dr. Miller's opinion, and Dr. Lee's opinion finding only moderate limitations for prolonged standing, bending, lifting, squatting, carrying and reaching overhead, to be supported by the medical evidence of record. Tr. 24.

Further, not only did the ALJ analyze Plaintiff's more recent evidence, but close inspection of the evidence reveals that the more recent records did not "directly contradict" any of the treatment records the ALJ relied upon in reaching her decision. On

14

the contrary, the evidence was consistent with the impairments that were observed during the relevant period between November 2015 and June 2018. For instance, an evaluation referenced by the ALJ that was conducted by Dr. Michael Cicchetti in May 2019 indicated that Plaintiff's "[p]ain is continuous" in her neck, upper back and lower back, and is worsened by most activities. Tr. 622 (referenced on Tr. 22). Nevertheless, Dr. Cicchetti found extension, flexion, bending, and rotation were full in Plaintiff's cervical spine, and moderately restricted in her lumbar and thoracic spine. Tr. 625. Notes from a follow-up visit to Dr. Cicchetti's clinic in July 2019 state that Plaintiff's status was largely unchanged, but that epidural steroid injections provided "significant" short term pain relief. Tr. 631. While the records from Plaintiff's treatments after her date last insured indicate that her physical condition is certainly not optimal, there is nothing in them that compels the conclusion that the ALJ relied on inaccurate reports of Plaintiff's functioning during the relevant period. Nor do the recent records compel the conclusion that the medical opinions of Dr. Miller and Dr. Lee, taken with the other record evidence, are not substantial evidence.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 14] is granted. The Clerk is directed to close this case.

DATED:    September 14, 2022
          Rochester, New York

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge